**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Angel Love Miles,

    Plaintiff,

                                    No.

    v.                                   Judge

                                      Jury Demanded

Board of Trustees of the University of
Illinois; University of Illinois Hospital & Health
Sciences System; Advanced Imaging and
Sleep Science Center; UI Health; and
University of Illinois College of Medicine,

    Defendants.

## COMPLAINT

## INTRODUCTORY STATEMENT

1.    A body of literature exists revealing that persons with disabilities report poorer health and poorer health outcomes compared to their counterparts without disabilities.[1] Persons with physical disabilities or cognitive limitations experience more cardiac disease, diabetes, stroke, arthritis and asthma, as well as high blood pressure and cholesterol levels as compared to persons without disabilities.[2] Persons with disabilities are far less likely to receive preventative screenings. The main reason for this can be attributed to the pervasive existence of access barriers – i.e., architectural, programmatic, communication and other barriers, to include the lack of disability–

---

[1] *See* A. Reichard, Ph.D. et al., *Health Disparities among Adults with Physical Disabilities or Cognitive Limitations Compared to Individuals with No Disabilities in the United States*. Disability and Health Journal, Vol. 4, Issue 4, October 2011, pp. 59-67. Available at http://www.disabilityandhealthjnl.com/.

[2] *See also* T. Lagu, M.D., et al., *Access to Subspecialty Care for Patients with Mobility Impairment: A Survey.* Annals of Internal Medicine, Vol. 158, No. 6, March 19, 2013, pp. 441-446. Available at http://annals.org/article.aspx?articleid=1667265.

#3206661v1

specific cultural competence among healthcare providers. This case is about the discriminatory denial of healthcare services resulting from Defendant's failure to provide accessible patient and testing rooms to afford Plaintiff an equal opportunity to participate in the Defendant's healthcare facilities and services.

2.      Plaintiff, Angel Love Miles, PhD. ("Dr. Miles"), uses a power wheelchair for mobility. She primarily receives her healthcare from Defendants. Twice, within the last 12 months, in the provision of her medical care there, UI Health scheduled Dr. Miles for overnight medical testing. Each time, upon scheduling her appointments, Dr. Miles advocated for her use of accessible patient and testing rooms. Each time, despite confirmation from UI Health that the rooms she would be placed in would be accessible, they were not.

3.      Dr. Miles brings this complaint under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973 as amended, 29 U.S.C. § 791 *et seq.* ("Rehabilitation Act"), and Section 1557 of Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.*, to seek a declaration that the Defendants illegally discriminated against her because of her disability and to enjoin Defendants' prohibited conduct by ordering Defendants to provide accessible patient and testing rooms; identify a specific  person responsible for UI Health's compliance with its federal nondiscrimination mandates; provide public notice of the contact information for such person; and adopt and implement applicable policies and procedures regarding the use of accessible patient and testing rooms, and how to handle complaints regarding accessibility. Dr. Miles also seeks compensatory damages for Defendants' deliberate indifference to her right to be free from this discriminatory conduct.

## JURISDICTION

4.      This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 (conferring jurisdiction over civil actions arising under laws of the United States) since they arise out of the protections provided in Section 504 of the Rehabilitation Act, Title II of the ADA and Section 1557 of the Affordable Care Act.

5.      Dr. Miles's claims for declaratory and other relief are authorized by 28 U.S.C. §§ 2201 and 2202.

6.      This Court is the appropriate venue under 28 U.S.C. § 1391(b) in that the Defendants are subject to personal jurisdiction in this District and the events giving rise to this Complaint occurred in this District.

## PARTIES

7.      Dr. Miles is a 39-year-old female, who resides in Chicago, Illinois. Dr. Miles has been seeing doctors and receiving treatment at Defendant's facilities since about early 2017 and will continue to receive care and treatment at those facilities.

8.      Dr. Miles was born with spina bifida and multiple congenital birth defects. Those conditions significantly limit her mobility and requires her to use motorized wheelchair for mobility.

9.      Dr. Miles is a qualified individual with a disability under the ADA, the Rehabilitation Act and the Affordable Care Act.

10.     Defendant Board of Trustees of the University of Illinois ("Board") exercises final authority over the University of Illinois ("University"), which includes the hospitals and health care system operated by the University of Illinois. The University operates a Medicare and Medicaid enrolled acute-care hospital and other healthcare related services in Chicago, Illinois

11.     The University has fifty or more employees.

12.     As a result of participating in Medicare and Medicaid, Defendant Board is a recipient of federal financial assistance.

13.     On information and belief, Defendant University of Illinois Hospital & Health Sciences System is in some fashion related to the University of Illinois at Chicago which operates the University's hospital and health care centers in Chicago, and provided care to Dr. Miles about which she complains herein.[3]

14.     On information and belief, Defendant Advanced Imaging and Sleep Science Center is in some fashion related to the University of Illinois at Chicago which operates the University's hospital and health care centers in Chicago, and provided care to Dr. Miles about which she complains herein. Dr. Miles's primary care physician identified Advanced Imaging and Sleep Science Center as an appropriate referral for her healthcare.

15.     On information and belief, Defendant UI Health is in some fashion related to the University of Illinois at Chicago which operates the University's hospital and health care centers in Chicago, and provided care to Dr. Miles about which she complains herein.

16.     On information and belief, the University of Illinois College of Medicine is in some fashion related to the University of Illinois at Chicago which operates the University's hospital and health care centers in Chicago and provided care and billed medical services to Dr. Miles for about which she complains herein. Dr. Miles' July 23, 2019 billing statement for the medical treatment described herein identifies this entity as the entity she owes for her healthcare.

---

[3] After appropriate research, Plaintiff's counsel are unable to determine from publicly available material whether all or some of the named Defendants are independent of or simply extensions of the Board. Plaintiff would not object to dismissing any named Defendant that is duplicative of the Board upon proof of the relationship.

17.     On information and belief, each of the Defendants employs more than fifty or more employees.

18.     Defendants each constitute a "program or activity" within the meaning of § 504 of the Rehabilitation Act. 29 U.S.C. § 794(b)(1).

19.     Defendants are each a "public entity" as defined by Title II of the ADA. 42 U.S.C. § 12131(1).

20.     Defendants are each a "covered entity" as defined by Section 1557 of the Affordable Care Act. 45 C.F.R. § 92.4.

**THE LAWS INVOLVED**
**THE AMERICANS WITH DISABILITIES ACT (ADA), 42 U.S.C. § 12131**

21.     The ADA contains three substantive Titles that address discrimination in the areas of employment, public services, and public accommodations. Dr. Miles brings this complaint under Title II of the ADA, which governs services, programs, and activities provided or made available by public entities and protects individuals from discrimination on the basis of disability by public entities.

22.     A public entity is defined to include "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1).

23.     The law governing Title II is found at 42 U.S.C. § 12101 *et seq.* and is codified at 28 C.F.R. § 35.101 *et seq.*

24.     Pursuant to the Title II of the ADA, Defendants cannot discriminate against Dr. Miles or other persons with disabilities based solely on their disabilities. 42 U.S.C. § 12132(a).

25.     The ADA requires that Defendants, "in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability –

[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service . . . ." 28 C.F.R. § 35.130(b)(1)(i).

26.    The ADA also prohibits Defendants from providing "a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others . . . ." 28 C.F.R. § 35.130(b)(1)(ii).

27.    Further, the ADA prohibits Defendants from providing "a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result or gain the same benefit, or to reach the same level of achievement as that provided to others . . . ." 28 C.F.R. § 35.130(b)(1)(iii).

28.    The ADA prohibits Defendants from "directly or through contractual or other arrangements, utiliz[ing] criteria or methods of administration . . . [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities . . . ." 28 C.F.R. § 35.130(b)(3)(ii).

29.    The ADA requires Defendants to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

30.    Subject to certain exceptions not applicable here, "no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity . . . ." 28 C.F.R. § 35.149.

31.    The ADA requires that "[a] public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."  28 C.F.R. § 35.150.

32.     The ADA requires "[a] public entity that employs 50 or more persons [to] designate at least one employee to coordinate its effort to comply with and carry out its responsibilities [under the ADA] . . . . The public entity shall make available to all interested individuals the name, office address, and telephone number of the employee or employees designated . . . ." 28 C.F.R. § 35.107(a).

## THE REHABILITATION ACT, 29 U.S.C §794.

33.     At all relevant times herein, Defendants received federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and are therefore subject to the antidiscrimination provisions of the Rehabilitation Act, as herein described.

34.     At all relevant times herein, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq*., and its implementing regulations, 45 C.F.R. §84.4(a).

35.     Section 504 of the Rehabilitation Act prohibits discrimination by recipients of federal funding against otherwise qualified individuals on the basis of their disabilities. 29 U.S.C. § 794. The Section 504 regulation provides:

> "A recipient, in providing any aid, benefit, or service, may not, ... on the basis of handicap: (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others ..."

45 C.F.R. § 84.4(b)(1) (ii). Elsewhere, the Section 504 regulation states:

> "In providing health, welfare or other social services or benefits, a recipient may not on the basis of handicap: … (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered non-handicapped persons.

45. C.F.R. § 84.52(a)(2).

36.     The Rehabilitation Act and the ADA are functionally identical except that the Rehabilitation Act also requires proof of the receipt of federal funds. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015).

### THE PATIENT PROTECTION AND AFFORDABLE CARE ACT, 42 U.S.C. § 18116

37.     At all relevant times herein, Defendants received federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and are therefore subject to the antidiscrimination provisions of the Affordable Care Act, as herein described.

38.     At all relevant times herein, there was in full force and effect a statute known as the Affordable Care Act, 42 U.S.C. § 18001, *et seq*., Pulp. 111-148, and its implementing regulations, 45 C.F.R. §§ 92.1 – 92.203.

39.     Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services. Said regulations define a "health program or activity" as "the provision or administration of health-related services … Such entities include a hospital, health clinic . . ." 45 C.F.R. § 92.4.

40.     Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116.

41.     The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, inter alia, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. See 45 C.F.R. § 92.101(a)(1). Regulations for accessible standards for buildings and facilities, 45 C.F.R. § 92.203(a), in pertinent part, provide:

"Each facility or part of a facility in which health programs or activities are conducted that is constructed or altered by or on behalf of, or for the use of, a recipient or State-based Marketplace[SM] shall comply with the 2010 Standards as defined in § 92.4, if the construction or alteration was commenced on or after July 18, 2016, except that if a facility or part of a facility in which health programs or activities are conducted that is constructed or altered by or on behalf of, or for the use of, a recipient or State-based Marketplace[SM], was not covered by the 2010 Standards prior to July 18, 2016, such facility or part of a facility shall comply with the 2010 Standards, as defined in § 92.4, if the construction was commenced after January 18, 2018. Departures from particular technical and scoping requirements by the use of other methods are permitted where substantially equivalent or greater access to and usability of the facility is provided. All newly constructed or altered buildings or facilities subject to this section shall comply with the requirements for a "public building or facility" as defined in Section 106.5 of the 2010 Standards."

42.     Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." See 45 C.F.R. § 92.301.

## STATEMENT OF FACTS

43.     Dr. Miles resides in the City of Chicago.

44.     Dr. Miles is a person with disabilities. She relies upon the use of a motorized wheelchair for all mobility purposes. Her wheelchair is approximately 25 inches wide.

45.     In late 2018 or early 2019, Dr. Miles' primary care physician recommended that Dr. Miles schedule a sleep study at Defendant Advanced Imaging and Sleep Science Center Health.

46.     When Dr. Miles made her appointment for the sleep study at Defendant Advanced Imaging and Sleep Science Center Health, she informed the person making the appointment that she is a wheelchair user and would need a wheelchair accessible room, with a wheelchair accessible bathroom and shower.

9

47.     The administrative staff member with whom Dr. Miles scheduled her appointment indicated that an accessible room, bathroom and shower would be provided.

48.     On February 18, 2019, Dr. Miles went to the University of Illinois at Chicago Hospital, specifically the UIC Sleep Science Center ("the Center"), for a sleep study. The Center is located at 2242 W Harrison St, Chicago, IL 60612.

49.     Upon arrival, the Center's staff placed Dr. Miles in a purported wheelchair accessible room, with an accessible bathroom, but without an accessible shower. The shower in the provided room did not have a shower seat.

50.     Due to her disability, Dr. Miles requires a shower chair in order to bathe and requires access to a shower when sleeping anywhere overnight.

51.     Dr. Miles asked staff to bring a portable shower chair into her room but was told by the Center's staff that the Center did not have any shower chairs and could not accommodate her request.

52.     This lack of access forced Dr. Miles to leave the facility without completing the sleep study, causing a delay in her medical care.

53.     On July 16, 2019, Dr. Miles went to the University of Illinois at Chicago Hospital ("the Hospital") for an overnight medical examination. The Hospital is located at 1740 W Taylor Street, Chicago, IL 60608.

54.     On July 15, 2019, Dr. Miles confirmed with her doctor's staff that she had an appointment the following day and would be booked into a wheelchair accessible patient room.

55.     When Dr. Miles arrived for her appointment, she was told that she would be placed in an accessible patient room.

56.    The patient room in which Dr. Miles was placed did not have adequate space for her wheelchair to turn between the bed and the door.

57.    The patient room into which Dr. Miles was placed also lacked adequate space for her wheelchair to pass through the doorway into the bathroom, and even if the chair could fit through the doorway there was not enough room to turn her wheelchair.

58.    When Dr. Miles asked staff for another patient room, after explaining that the assigned room was not wheelchair accessible, she was told this was the only patient room available.

59.    Dr. Miles spoke with a supervisor who advised her that the bathroom in that patient room was "one of the biggest."

60.    The staff moved Dr. Miles into a different patient room about 7 hours later.

61.    In the time that Dr. Miles was waiting for a new patient room, she was forced to use a bedpan because there was not a bathroom available to accommodate her.

62.    This experience caused Dr. Miles to experience anxiety, depression, frustration and embarrassment. Requiring her to use a bedpan was demoralizing and made a feel that the Defendant did not care for her as a person.

63.    The staff moved Dr. Miles to a new patient room staff which had more space, allowing her to navigate her wheelchair between the bed and the door.

64.    However, the bathroom door in that patient room was again too narrow to allow her to fit her wheelchair inside, nor could it fit two people inside.

65.    Not wanting to delay her medical care further, Dr. Miles stayed in that patient room.

66.    When Dr. Miles asked staff again about these issues, she was told that patient room was the only option available.

67. On the two occasions mentioned, Dr. Miles was denied these accommodations. putting her health and medical care at risk.

68. On these two occasions. Dr. Miles was unable to locate an ADA coordinator to discuss the accommodations she needed.

## COUNT I:
## DISCRIMINATION UNDER § 504 OF THE REHABILITATION ACT OF 1973
### (29 U.S.C. § 794 *et seq.*)

69. Paragraphs 1 – 68 above are incorporated as if set forth fully herein.

70. Section 504 of the Rehabilitation Act prohibits discrimination against otherwise qualified individuals on the basis of their disabilities by recipients of federal funding. *See* 29 U.S.C. § 794.

71. Defendants receive federal financial assistance as result of their participation in the Medicare and Medicaid programs and are subject to the requirements of § 504.

72. Dr. Miles is "handicapped" within the meaning of § 504.

73. Defendants operate their medical programs without accessible patient rooms and treatment rooms, or without a sufficient number of accessible patient rooms and treatment rooms and therefore discriminate against Plaintiff in violation of § 504.

74. Defendants operate their medical program without an identified employee or employees responsible for coordinating Defendants' efforts to comply with § 504.

75. Defendants operate their medical program without making publicly available the name, office address and telephone number of the employee or employees responsible for coordinating the accessibility of Defendants' patients' care.

76. Defendants' decision to operate a medical program as it presently does renders Defendants' medical program inaccessible to Dr. Miles and other individuals with disabilities.

77.     Defendants' decision to operate a medical program without an employee or employees identified to coordinate efforts to comply with the Rehabilitation Act renders Defendants' program inaccessible to Dr. Miles and other individuals with disabilities.

78.     Defendants' acts and omissions constitute a violation of Dr. Miles's rights under § 504. Defendants' conduct constitutes an ongoing and continuous violation of § 504 and unless restrained and enjoined from doing so, Defendants will continue to violate § 504. Defendants' acts and omissions, unless enjoined, will continue to inflict irreparable injuries for which Dr. Miles has no adequate remedy at law.

79.     Defendants' acts and omissions were made intentionally and with deliberate indifference to Dr. Miles's right to be free from discrimination on the basis of her disability under § 504.

80.     As a proximate result of Defendants' violations of § 504, Defendants have inflicted injury and damages upon Dr. Miles, including a loss of a civil right, mental anguish, humiliation and mental pain and suffering.

**COUNT II:**
**VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12131)**

81.     Paragraphs 1 – 68 above are incorporated as if set forth fully herein.

82.     Title II of the ADA prohibits discrimination against individuals with disabilities and extends the non-discrimination rule of § 504 of the Rehabilitation Act to services provided by any public entity. See 42 U.S.C. § 12132.

83.     Defendants are public entities subject to the requirements of the ADA.

84.     Dr. Miles is a qualified individual with a disability within the meaning of the ADA.

85.     Defendants operate their medical programs without accessible patient rooms and treatment rooms, or without a sufficient number of accessible patient rooms and treatment rooms and therefore discriminates against Plaintiff in violation of the ADA.

86.     Defendants operate their medical program without an identified employee or employees responsible for coordinating Defendants' efforts to comply with the ADA.

87.     Defendants operate their medical program without making publicly available the name, office address and telephone number of the employee or employees responsible for coordinating the accessibility of Defendants' patients' care.

88.     Defendants' decision to operate a medical program as it presently does renders Defendants' medical program inaccessible to Dr. Miles and other individuals with disabilities.

89.     Defendants' decision to operate a medical program without an employee or employees identified to coordinate efforts to comply with the ADA renders Defendants' program inaccessible to Dr. Miles and other individuals with disabilities.

90.     Defendants' acts and omissions constitute a violation of Dr. Miles's rights under the ADA. Defendants' conduct constitutes an ongoing and continuous violation of the ADA and unless restrained and enjoined from doing so, Defendants will continue to violate the ADA. Defendants' acts and omissions, unless enjoined, will continue to inflict irreparable injuries for which Dr. Miles has no adequate remedy at law.

91.     As a proximate result of Defendants' violations of the ADA, Defendants have inflicted injury and damages upon Dr. Miles, including a loss of a civil right, mental anguish, humiliation and mental pain and suffering.

**COUNT III:**
**VIOLATIONS OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT,**
**42 U.S.C. § 18116**

92.     Paragraphs 1 – 68 above are incorporated as if set forth fully herein.

14

93.     Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116.

94.     Section 1557 prohibits an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. See 45 C.F.R. § 92.101(a)(1).

95.     Section 1557's regulations for accessible standards for buildings and facilities requires covered entities to comply with applicable ADA technical and scoping standards for accessible design.  See 45 C.F.R. § 92.203(a).

96.     Section 1557 requires covered entities with 15 or more employees to designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under Section 1557, including the investigation of any grievance communicated to it alleging noncompliance with Section 1557 or alleging any action that would be prohibited by Section 1557. See 45 C.F.R. § 92.7(a). Each covered entity that employs 15 or more persons is also required by Section 1557 to adopt grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of grievances alleging any action that would be prohibited by Section 1557. See 45 C.F.R. § 92.7(b).

97.     Defendants operate their medical programs without accessible patient rooms and treatment rooms, or without a sufficient number of accessible patient rooms and treatment rooms and therefore discriminates against Plaintiff in violation of the Section 1557.

98.     Defendants operate their medical program without an identified employee or employees responsible for coordinating Defendants' efforts to comply with the Section 1557.

99.     Defendants operate their medical program without making publicly available the name, office address and telephone number of the employee or employees responsible for coordinating the accessibility of Defendants' patients' care.

100.     Defendants' decision to operate a medical program as it presently does renders Defendants' medical program inaccessible to Dr. Miles and other individuals with disabilities.

101.     Defendants' decision to operate a medical program without an employee or employees identified to coordinate efforts to comply with the Section 1557 renders Defendants' program inaccessible to Dr. Miles and other individuals with disabilities.

102.     Defendants' acts and omissions constitute a violation of Dr. Miles's rights under the Section 1557. Defendants' conduct constitutes an ongoing and continuous violation of the Section 1557 and unless restrained and enjoined from doing so, Defendants will continue to violate the Section 1557. Defendants' acts and omissions, unless enjoined, will continue to inflict irreparable injuries for which Dr. Miles has no adequate remedy at law.

103.     Defendants' acts and omissions were made with deliberate indifference to Dr. Miles's right to be free from discrimination on the basis of her disability under the Section 1557.

104.     As a proximate result of Defendants' violations of the Section 1557, Defendants have inflicted injury and damages upon Dr. Miles, including a loss of a civil right, mental anguish, humiliation and mental pain and suffering.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff Dr. Miles prays that this Court:

A.     Declare that Defendants' operation of its medical program violates the ADA,  the Rehabilitation Act, and the Affordable Care Act by failing to be accessible to Dr. Miles and people with disabilities;

16

B.     Enter a preliminary and permanent injunction against Defendants, ordering them

to:

1.  Have wheelchair accessible patient rooms and treatment rooms that comply with
    the applicable standards of the ADA;

2.  Employ such staff as are required to coordinate Defendants' efforts to provide
    accessible healthcare;

3.  Adopt such policy as is required to permit coordinators to direct medical providers
    so that the medical providers treat patients with disabilities in accessible facilities
    as required by the individual needs of each patient; and

4.  Make available to all interested individuals the contact information for staff
    responsible for coordinating accessible healthcare.

C.     Award Dr. Miles compensatory damages;

D.     Award Dr. Miles reasonable costs and attorneys' fees; and

E.     Grant such other relief as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff Dr. Miles demands a jury trial on all issues properly triable by a jury.

17

Dated: February 14, 2020

Respectfully Submitted,

＿＿/s/ Charles R. Petrof＿＿＿＿＿＿＿＿＿
Charles R. Petrof,
Senior Attorney at Access Living

Charles R. Petrof (ARDC No. 6231201)
ACCESS LIVING OF METROPOLITAN CHICAGO
115 W. Chicago Ave.
Chicago, Illinois 60654
Phone:     (312) 640-2124
Fax:        (312) 640-2139
TTY:        (312) 640-2169
cpetrof@accessliving.org

Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com

Attorneys for Plaintiff